UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KIMBERLY B. GRAY,

                    Petitioner,

        v.

UNITED STATES OF AMERICA,

                    Respondent.

CASE NO. CV 18-5464 BHS
        (CR 16-5600 BHS)

ORDER DENYING IN PART
PETITIONER'S MOTION TO
VACATE, SET ASIDE, OR
CORRECT SENTENCE AND
GRANTING EVIDENTIARY
HEARING ON GROUND TWO

        This matter comes before the Court on Petitioner Kimberly Gray's ("Gray")

motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Dkt. 1. The Court

has considered the pleadings filed in support of and in opposition to the motion and the

remainder of the file and hereby denies the motion in part, grants an evidentiary hearing

on ground two, and reserves ruling on the merits of ground two for the reasons stated

herein. The Court further orders Gray to show cause why the remaining grounds for relief

should not be dismissed for failure to prosecute.

## I.    FACTUAL BACKGROUND

        In December 2016, federal agents investigating drug trafficking arrested Gray at

her home in Port Orchard, Washington. *United States v. Gray*, Cause No. 3:16-cr-5600-

BHS ("CR"), Dkt. 372 ¶ 9. When agents entered the home, they discovered Gray in a

bathroom attempting to flush methamphetamine down the toilet. *Id.* Agents recovered 304.1 grams of methamphetamine from the bathroom. *Id.* Agents also discovered 364.3 grams of methamphetamine in a bedroom closet. *Id.*

Agents searched Gray's home as part of an investigation into a drug trafficking organization ("DTO") led by Jose Mozqueda Vasquez. *Id.* Gray "served as a redistributor for the Mozqueda Vasquez DTO." *Id.* "As a DTO redistributor, [Gray] regularly obtained methamphetamine from Mozqueda Vasquez, or another DTO member, and distributed it to others in the community on behalf of the DTO." *Id.* "More specifically, [Gray] would typically obtain five to ten pounds of methamphetamine per month. [Gray] then redistributed the methamphetamine to approximately 15 other individuals in the community." *Id.*

The Court appointed attorney James B. Feldman ("Feldman" or "Gray's counsel") to represent Gray.[1] CR, Dkt. 49. On April 13, 2017, the grand jury returned a superseding indictment charging Gray with conspiracy to distribute a controlled substance, distribution of a controlled substance, and possession of a controlled substance with intent to distribute. *Id.*, Dkt. 273. The latter two charges each carried a mandatory minimum sentence of ten years. 21 U.S.C. § 846(b)(1)(A).

Gray's counsel negotiated a plea agreement on her behalf. Under the terms of the agreement, Gray agreed to plead guilty to the lesser-included offense of conspiracy to distribute a controlled substance which had a mandatory minimum sentence of five years.

---

[1] References to "Gray's counsel" refer to former counsel James Feldman throughout.

CR, Dkt. 372; 21 U.S.C. § 841(b)(1)(B). In exchange for Gray's plea the Government agreed to dismiss the remaining counts, each of which carried mandatory ten-year sentences. CR, Dkt. 273. The Government agreed to recommend a sentence no longer than 96 months on the conspiracy charge. *Id.*

On June 14, 2017, the Court held a change of plea hearing and conducted a guilty plea colloquy in accordance with Fed. R. Civ. P. 11. *Id.*, Dkt. 371.

The Court inquired about Gray's preparation for the hearing as follows:

THE COURT: Have you had time, then, to prepare for this hearing by going over with [counsel] in detail the plea agreement and go over your case thoroughly enough so that you think you are fully prepared to enter a plea here?

THE DEFENDANT: Yes, Your Honor.

Dkt. 20-5, Transcript of Change of Plea Hearing ("Plea Tr.") at 5.[2] The Court further advised Gray she could have "whatever time you want and need [with counsel] in order to be confident that you are ready to proceed." *Id.*

Gray admitted that she redistributed a minimum of 5 kilograms of methamphetamine during her participation in the conspiracy. CR, Dkt. 372 ¶ 9. The Court found a factual basis for the plea, found that Gray entered the plea knowingly, intelligently, and voluntarily, and found her guilty of conspiracy to distribute a controlled substance. Plea Tr. at 18.

On September 25, 2017, the Court sentenced Gray to 72 months of imprisonment and four years of supervised release. CR, Dkt. 514. The Court accepted the parties'

---

[2] The Court refers to the pagination generated by the CM/ECF system throughout.

stipulations to a base offense level of 34 and to a 3-level reduction for acceptance of responsibility, resulting in a net offense level of 31. Dkt. 17-1, Transcript of Sentencing Hearing ("Sent. Tr.") at 4. However, Gray objected to the probation officer's conclusion that her prior convictions placed her in criminal history category III. *Id.* at 6. The Court sustained Gray's objection and reduced her criminal history category to II, thereby determining the applicable guideline sentencing range to be 121–151 months. *Id.*; *see also* United States Sentencing Commission, *Guidelines Manual* ("USSG"), Ch. 5, Part A (Nov. 2016) (showing sentencing range for offender with net offense level of 31 and criminal history category of II).

Gray's counsel advocated for the minimum sentence under law, 60 months, while the Government asked the Court to impose 96 months. Sent. Tr. at 11–12. Gray's counsel supported his 60-month request by arguing that (1) Gray had successfully completed treatment for alcoholism at the pretrial stage, (2) Gray's criminal history was limited and non-violent, and (3) a 60-month sentence would sufficiently deter Gray from future criminal conduct due to the lengthy separation from her children. *Id.* at 11–13.

The Government filed an exhibit prior to sentencing summarizing the roles of the members of the DTO. Dkt. 20-3. The exhibit characterized Gray as a "redistributor" of methamphetamine. *Id.* Gray's counsel did not request a two-level reduction under USSG § 3B1.2(b) for her being a minor participant in the DTO at sentencing. When imposing the sentence, the Court referred to Gray as a "significant redistributor" of methamphetamine, Sent. Tr. at 15, and noted that "the amount of drugs that were

involved here could clearly have lead [sic] to a much longer prison sentence than is the one that is being recommended here," *id.* at 16.

Gray did not pursue a direct appeal.

## II. PROCEDURAL HISTORY

On June 4, 2018, the Court received a motion for minor role reduction from Gray acting pro se. CR, Dkt. 719. The Court forwarded the motion to Gray's counsel. *Id.* On June 7, 2018, Gray's counsel wrote to her advising that if she wished to pursue the minor role claim, it was his belief she "would have to file a Writ under 28 U.S.C. § 2255 and allege ineffective assistance of counsel for my not arguing that you were deserving of a minor role adjustment." Dkt. 20-4. On June 11, 2018, Gray filed a pro se § 2255 petition asserting ineffective assistance of counsel based on ten grounds. Dkt. 1.[3]

The Court allowed Gray's counsel to withdraw, CR, Dkt. 733, and appointed attorney Suzanne Elliott ("Elliott") to represent Gray. Dkt. 10. After her appointment, Elliott prepared all of Gray's submissions to the court. On October 23, 2018, the parties filed a stipulated motion amending the petition. Dkt. 14. The stipulation addressed only three of the ten grounds in the original petition; ground ten was withdrawn, and ground one and ground nine were amended as follows:

---

[3] The grounds are: (1) failure to adequately review and discuss discovery materials; (2) failure to adequately explain the benefits of proffering; (3) failure to seek a minor role adjustment; (4) failure to adequately inform of the Dream Court requirements; (5) failure to inform of the ability to present character letters to the court; (6) failure to seek a "2-point non-violent drug offender (Amendment 782)" adjustment; (7) failure to explain the effect of "relevant conduct" on the sentence; (8) failure to seek a mental health adjustment; (9) failure to spend adequate time meeting with petitioner in preparation for the defense; and (10) failure to inform petitioner of the right to appeal. Dkt. 1.

> **Ground One**: Gray asks to amend her petition to clarify and allege that trial counsel's failure to review and discuss the discovery materials with her prejudicially impacted her sentencing presentation.
>
> **Ground Nine**: Gray asks to amend her petition to clarify that trial counsel did not meet with her enough to properly discuss the case against her and benefits of making a proffer and seeking a 5K1.1 Motion.

*Id.* (emphasis in the original). The stipulation further clarified that Gray only wished to challenge her counsel's performance as it impacted her at sentencing. *Id.*

On January 4, 2019, Gray filed a memorandum of law in support of the amended petition. Dkt. 17. The memorandum, however, discussed only three grounds of Gray's claim of ineffective assistance: failure to discuss and/or review discovery materials with petitioner (ground one as amended); failure to adequately advise petitioner about the benefit giving a proffer may have on the sentence (ground nine as amended and combined with ground two);[4] and failure to seek a sentencing reduction for having a minor role in the DTO (ground three). *Id.*

On February 26, 2019 the Government responded, also addressing only grounds one, two, and three. Dkt. 20. On March 15, 2019, Gray replied. Dkt. 21.

---

[4] Like ground nine as amended, ground two similarly alleges that counsel failed to adequately explain the benefits of proffering. Dkt. 1 at 5. Based on this overlap, the Court finds it prudent to combine ground nine as amended with ground two for purposes of review (hereinafter referenced collectively as "ground two").

# III.  DISCUSSION

## A.     Standards of Review

### 1.      28 U.S.C. 2255

Under 28 U.S.C. § 2255, the Court may grant relief to a federal prisoner who challenges the imposition or length of his incarceration on the ground that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

A judge may dismiss a § 2255 motion if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b) of the Rules Governing § 2255 Proceedings. If the motion is not summarily dismissed, "the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). The Ninth Circuit has characterized this standard as requiring an evidentiary hearing when the petitioner "has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (citing *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)).

### 2.      Ineffective Assistance of Counsel

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court evaluates ineffective assistance of counsel claims under the two-prong test set forth in

*Strickland*. To prevail, the prisoner must prove (1) that his counsel's performance was deficient, and (2) that this deficient performance was prejudicial. *Id.*

To establish deficient performance, Gray must show that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. The Court must apply a "strong presumption" that counsel's conduct falls within the "wide range of reasonable professional assistance." *Id.* at 689. With respect to prejudice, Gray must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.*

**B.      Application to § 2255 Petition**

Petitioner asserts she was denied her Sixth Amendment right to effective assistance at sentencing based on three alleged errors by counsel: (1) failing to review and discuss discovery materials with her, (2) failing to explain the benefits of providing a proffer to her, including the possibility that the Government would file a § 5K1.1 motion, potentially allowing her to obtain a sentence below the mandatory minimum, and (3) failing to argue for a minor role adjustment. Dkt. 17 at 2–3. Gray further asserts that the Court would have imposed a sentence shorter than 72 months but for the combination of these three alleged errors, thereby prejudicing her. *Id.* at 3.

As discussed in further detail below, the Court concludes that Gray fails to meet her burden to establish ineffective assistance based on grounds one and three but states a prima facie case of deficient and prejudicial performance requiring an evidentiary hearing on ground two. Additionally, the Court addresses the grounds remaining from the original

petition (four, five, six, seven, and eight) and orders Gray to show cause why those grounds should not be dismissed.

### 1. Ground One: Discovery

The first question presented is whether Gray's counsel was ineffective based on an alleged failed to review and discuss all discovery materials with her. Dkt. 17 at 2–3. Gray relies on *Strickland* to establish that criminal defense lawyers have a duty "to consult with the defendant on important decisions and to keep the defendant informed of important developments." *Id.* at 3 (citing *Strickland*, 466 U.S. at 688). Although missing words and/or grammatical errors make Gray's two-sentence application of this principle to the discovery claim confusing, she appears to argue for a significant extension of the principle without citation to authority. *See id.* (stating that counsel's duty to consult the defendant on important decisions and developments "would include *full information of the evidence* [sic] to support the Government's case. Thus, the failure to review and adequately consult with a client is ineffective.") (emphasis added). Gray does not allege that her counsel was ineffective based on his *own* review of the discovery. Thus, the Court construes Gray's argument to be an assertion that attorneys have a duty to review *all* evidence (full information) in tandem with their clients—and that counsel was not acting as the effective counsel required by the Sixth Amendment when he reviewed some of the discovery without consulting Gray. *Id.* Gray's argument fails for two reasons.

First, citing only to *Strickland*, Gray fails to establish that a criminal defense attorney is ineffective if he fails to review all discovery in a matter with the client. The Government's investigation in this case culminated in the indictment of 19 suspected

DTO members; discovery was unsurprisingly voluminous. *See* Dkt. 372 (detailing the evidence establishing the conspiracy and Gray's role therein as "witness and informant accounts; recorded telephone calls; court-authorized interceptions of wire and electronic communications; controlled purchases of drugs by confidential sources; surveillance; seizures of drugs and cash; search warrants; and other evidence . . ."). It is undisputed that Gray's counsel reviewed some of this evidence with Gray. For example, Gray's counsel declares that he met with Gray to review the "contents of the government's September 2016 application for an order authorizing inception of wire and electronic communications" from Gray and several other suspects' cellular phones on January 13, 2016. Dkt. 20-2, Declaration of James B. Feldman ("Feldman Decl."), ¶ 3. Gray concedes that the January 13 meeting took place and confirms that she reviewed discovery at the meeting. Dkt. 21-1, Declaration of Kimberly Gray ("Gray Decl."), ¶ 1. Gray also declares that she reviewed discovery at a second meeting with counsel in March. *Id.*, ¶ 2. The Court presumes that Gray's counsel was acting professionally when he twice reviewed the Government's evidence with Gray, *Strickland*, 466 U.S. at 689, and Gray fails to establish with authority that the Constitution required him to do more.

Second, even if the Court assumes for purposes of argument that Gray's statement of the law is correct, she fails to demonstrate prejudice because she makes no connection between this specific error and the length of her sentence. In the motion, Gray asserts that counsel's alleged failure to review *discovery* with her "prejudiced her because she either did not have a thorough enough discussion with counsel about the advantages of a *5K1.1* or the lack of discussion resulted in Gray's misunderstanding of benefit [sic] she could

receive if she made a *proffer*." Dkt. 17 at 3 (emphasis added). But Gray fails to establish prejudice on the discovery review claim by pointing to the type of prejudice that may result from a failure to explain the potential sentencing benefits of cooperating with the Government. Gray offers no other evidence of prejudice specific to the discovery claim, nor does she identify what discovery she believes counsel should have reviewed with her or how that might have affected her sentence. However, Gray does admit to realizing "the Government had plenty of evidence to convict me" after the first of two discovery review meetings she had with counsel. Gray Decl. ¶¶ 1, 2. Given this concession, it is unsurprising that she does not even attempt to argue that her sentence would have been shorter if counsel *had* reviewed all of the Government's evidence with her. Because Gray has not demonstrated a reasonable probability of receiving a lesser sentence even if her allegations are true, she fails to demonstrate prejudice on this ground. Therefore, the Court denies ground one.

### 2. Ground Two: Sentence Reduction Under USSG § 5K1.1

The Court next addresses Gray's claim that that counsel was ineffective because he failed to adequately explain the sentencing benefits of cooperating with the Government. Dkt. 17 at 4; *see also* Dkt. 1 at 5 ("At no point did Counsel tell me that if I cooperated with the Government, I could have received a reduced sentence. It wasn't until after I was in prison did I find out that if I would have cooperated, I could have received a 5K1.1 or a Rule 35 reduction.").

Regarding the advice he gave Gray on cooperating with the Government, Feldman declares as follows:

At the same January 13, 2017, meeting described above in which I reviewed discovery with Ms. Gray, I discussed with her the potential benefit of cooperating with law enforcement. **Although I did not refer to this as proffering, I explained that providing the Government with helpful information about her case might result in a sentencing benefit.** Ms. Gray strongly objected to the idea of cooperating and insisted she did not know any information that would be useful to law enforcement.

Feldman Decl., ¶ 9. Gray states in reply that she "disputes Mr. Feldman's assertion that he *fully* explained the operation of USSG § 5K1.1 and how a proffer would have aided in her request that he seek the least amount of incarceration time possible." Dkt. 21 at 1 (citing Gray Decl.) (emphasis added). However, Feldman does not mention § 5K1.1 in his declaration, let alone declare that he explained fully the specific operation of § 5K1.1. Moreover, the declaration Gray submitted with her reply does not contain any outright denial of Feldman's explanation of the advice he gave Gray before her plea and sentencing. *Compare* Gray Decl., ¶ 3 (stating that she "did not understand *all of the issues* related to 5K1.1 . . . . It was only later that I learned that I had to come in and tell the Government everything I knew.") *with id.*, ¶ 6 (stating that the only reason Feldman assumed she did not want to provide a proffer was "because he did not explain that option *fully* to me."). In light of Gray's assertions, the Court concludes that the parties agree that Feldman discussed with Gray the general opportunity to cooperate and/or provide a proffer to the Government.

The parties do dispute whether Feldman explained the impact Gray's cooperation could have on her sentence under USSG § 5K1.1. Dkt. 21 at 1 (citing Gray Decl.). Section 5K1.1 permits district courts to depart from the minimum sentence required by the sentencing guidelines "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who

has committed an offense." USSG § 5K1.1; 18 U.S.C. § 3553(e). It is the Government's decision whether to move for a departure from sentencing guideline based on a defendant's substantial assistance under USSG § 5K1.1. *Wade v. United States*, 504 U.S. 181, 185 (1992). Although "a downward departure for substantial assistance is never guaranteed, as the government may rightfully decline to file a substantial assistance motion for any reason . . . . such a departure is assuredly impossible to obtain without successful cooperation." *United States v. Leonti*, 326 F.3d 1111, 1119 (9th Cir. 2003) (counsel's failure to facilitate client's efforts to provide cooperation to an interested Government while awaiting sentencing constituted the ineffective assistance of counsel).[5]

In *Leonti*, the Ninth Circuit held that the period of a defendant's cooperation with the government was a critical stage of the proceedings requiring the effective assistance of counsel. *Id.* at 1120. Finding the defendant had stated a claim on the allegation that his attorney failed to facilitate his extensive efforts to cooperate with the Government, the Court remanded the case for an evidentiary hearing. *Id.* at 1121–22. Although *Leonti* involved an attorney who failed to assist his client in cooperating with the Government, while Gray did not attempt to cooperate but argues she would have if her attorney explained she could potentially escape a mandatory minimum by doing so, the Court finds that she has alleged a preliminary showing of deficient performance on ground two.

---

[5] Gray does not cite to *Leonti*, or to any authority establishing that failure to explain the operation of a § 5K1.1 motion in relation to a mandatory minimum constitutes the ineffective assistance of counsel. *See* Dkt. 17 at 3–4.

First, "[c]ooperating with the government has become a crucial aspect of plea bargaining and sentencing under the Federal Sentencing Guidelines." *Leonti*, 326 F.3d. at 1117. As the Circuit noted, [b]ecause 85% of federal criminal cases are resolved by plea, it is not surprising that sentencing has become the effective focus of a defendant's efforts to secure a favorable outcome." *Id.* at 1118 (footnote omitted). *Id.* Because alternative bases to go below a sentencing guideline range are largely limited by the presence or absence of specific factual circumstances, obtaining a § 5K1.1 motion based on cooperation with the Government "is critical to a defendant's hope of a reduced sentence." *Id.* Indeed, without the Government's filing of a § 5K1.1 motion, "a defendant has little hope of obtaining a reduced sentence." *Id.* Undeniably then, "for many federal defendants, such as [Gray], the only hope of mitigating the often harsh effects of the sentencing guidelines is cooperation with the Government." *Id.* Despite the factual distinctions between *Leonti* and the instant case, then, the important relationship between a defendant's cooperation and the ultimate sentence dictates this Court's conclusion that an allegation that an attorney did not explain the operation of a § 5K1.1 motion as a means to reduce a mandatory minimum sentence constitutes a prima facie claim of ineffective assistance.[6]

Second, Feldman fails to specifically rebut the allegation that he failed to explain the operation of a § 5K1.1 motion in relation to the five-year mandatory minimum sentence

---

[6] At least one court has found ineffective assistance when counsel failed to advise the defendant of the importance of cooperation as a means of reducing the sentence early in the case. *See United States v. Fernandez*, No. 98 CR. 961 JSM, 2000 WL 534449, at *2 (S.D.N.Y. May 3, 2000), *opinion adhered to on reconsideration*, No. 98 CR. 961 JSM, 2000 WL 815913 (S.D.N.Y. June 22, 2000).

Gray faced at sentencing. Although he declares that he "explained that providing the Government with helpful information about her case might result in a sentencing benefit, Feldman Decl., ¶ 9, he did not declare, specifically state, or otherwise provide the Court with affirmative evidence indicating that he explained that cooperating with the Government could allow Gray to receive a sentence below 60 months pursuant to § 5K1.1. Thus, it seems undisputed that Feldman failed to inform Gray that the Court could impose a sentence lower than 60 months if the Government brought a substantial assistance motion under § 5K1.1. Therefore, although the Court should note that it has prior experience with Feldman and considers him to be an experienced, competent, and able attorney, the Court concludes that Gray meets *Strickland's* first prong of deficient performance.

To proceed to an evidentiary hearing on ground two, Gray must also demonstrate prejudice. To show prejudice, Gray need only demonstrate a "probability sufficient to undermine confidence in the outcome," which here, is a probability sufficient to undermine confidence that the sentence would have been shorter but for counsel's errors. *Strickland*, 466 U.S. at 694. Said another way, assuming Feldman had told Gray she could escape the mandatory 60 months through the operation of a § 5K1.1 motion, Gray must undermine the Court's confidence in the appropriateness of the 72-month sentence to show prejudice. The Government argues that Gray fails to show prejudice because she failed to plead specific facts demonstrating that (1) she was in a position to provide substantial assistance to the Government, and (2) the Government would have likely sought a reduction of her sentence based on § 5K1.1. Dkt. 20 at 12–14.

While the Court agrees that Gray's motion and supporting declaration are imprecise and generally lack citation to authority, and that the question is close, Gray has met her burden to demonstrate a reasonable probability that the Court would have imposed a sentence shorter than 72 months but for counsel's errors.

First, Gray pled facts indicating she would have cooperated with the Government had she known of the operation of the § 5K1.1 motion. Gray Decl. ¶ 10 ("I could have supplied the Government with information and would have done so had I received the correct explanation and advice from [counsel].") (handwritten edits to the declaration incorporated). Indeed, Gray's main priority throughout the case was to serve "as little prison time as possible." Feldman Decl., ¶ 4; *see also id.* ¶ 7 ("Her primary concern then, as at all times, was avoiding a ten-year mandatory-minimum sentence."). While it is true that Gray failed to identify the specific evidence she would have provided at a proffer session, and by extension, failed to explain how that hypothetical information would have led to her providing substantial assistance, the Court finds that the exacting pleading standard advocated by the Government on this issue goes beyond what Gray, a known drug trafficker who redistributed significant amounts of methamphetamine to various associates, must allege to demonstrate prejudice under *Strickland*. Therefore, the Court credits Gray's declaration in finding a reasonable probability that had Gray known she could potentially escape even the 60-month mandatory minimum by cooperating with the Government, she would have attempted to do so.

Second, the Court concludes that Gray demonstrates a reasonable probability that her cooperation may have led the undersigned to impose a sentence lower than 72

months. The Government argues that Gray was not particularly credible and as a result, it was unlikely to have sought a reduced sentence on her behalf via § 5K1.1. Dkt. 20 at 13. While this may be true, it is difficult for the Court to assess on a post-hoc basis whether the Government was likely to bring a § 5K1.1 motion based on Gray's substantial assistance had she cooperated, and so the Court will instead rely on its own record. When imposing sentence, the Court commented on Gray's disrespect for the law, noting that she had given the Court "no assurance" that she had decided "to leave a criminal life behind." Sent. Tr. at 16. Given these statements, the Court does not have confidence that Gray would have received the same 72-month sentence had the undersigned also been presented with the fact of her cooperation. This conclusion stands even if Gray's cooperation did not actually lead the Government to file a § 5K1.1 motion, because the mere fact of her attempted cooperation would have been a matter of mitigation properly considered by the Court. Therefore, Gray has demonstrated a reasonable probability that counsel's failure to explain the impact of a § 5K1.1 motion led her to receive a longer sentence, thereby demonstrating prejudice.

A petitioner moving for federal habeas relief under § 2255 is entitled to an evidentiary hearing after making "specific factual allegations that, if true, state a claim on which relief could be granted." *Schaflander*, 743 F.2d at 717. Because Gray has sufficiently alleged deficient performance and prejudice as explained above, she has stated a claim on which relief could be granted on ground two. The Court will therefore hold an evidentiary hearing on ground two. 28 U.S.C. § 2255(b).

At the evidentiary hearing, the Court must "determine the issues and make findings of fact and conclusions of law with respect" to the issues raised by ground two. *Id.* While the Court has found that Gray states a prima facie case of ineffective assistance based on Feldman's failure to discuss § 5K1.1 in relation to her mandatory minimum sentence, there is insufficient evidence in the record to determine whether this decision was reasonable given Gray's alleged responses to Feldman. For example, Feldman declares that he "raised the possibility of cooperating with law enforcement" to Gray at least twice, but both times she responded by objecting to the idea of cooperating, saying she had no information to provide. Feldman Decl., ¶¶ 9–10. On her part, Gray states that the only reason Feldman "assumed" she did not want to cooperate was because he did not fully explain the sentencing benefits associated with the option. Gray Decl., ¶ 6. Because Gray only references Feldman's "assumption" that she did not want to cooperate, it is unclear whether she admits or denies twice telling Feldman that she did not have any information to provide to the Government.

Should Gray deny she made the statements, the Court will have to resolve an issue of credibility between her and Feldman. Should Gray admit to twice telling Feldman she had no information to provide, the Court must consider her responses in determining whether it was reasonable for Feldman to decline to discuss the impact of § 5K1.1 before sentencing with a client who faced a mandatory minimum sentence.

Finally, Feldman does not state whether the second conversation about cooperation included his explanation of the impact of a § 5K1.1 motion on the sentence. *See* Feldman Decl., ¶ 10. Should Feldman admit that he never discussed the operation of

§ 5K1.1 with Gray before sentencing, the Court is likely to conclude that this omission was ineffective. The Court will resolve these factual and legal issues at or shortly after the evidentiary hearing.

### 3. Ground Three: Minor Role Adjustment

Gray claims Feldman provided ineffective assistance because he "failed to seek a 'minor participant' role reduction" at sentencing. Dkt. 17 at 4. Section 3B1.2(b) of the sentencing guidelines permits judges to reduce a defendant's offense level by two levels if the court determines that the defendant was a minor participant in the criminal activity at issue. USSG § 3B1.2(b). The provision applies when a defendant is "substantially less culpable than the average participant" in the conspiracy. USSG § 3B1.2, cmt. 3(A).

The Government argues that Gray fails to establish ineffective assistance because she would not have qualified for a minor role adjustment based on her status as a redistributor working closely with the DTO leader. Dkt. 20 at 14. The Court agrees that Gray was not substantially less culpable than other DTO members. In the plea agreement, Gray admitted to redistributing large quantities of methamphetamine on behalf of Mozqueda Vasquez, the leader of the DTO. CR, Dkt. 372 ¶ 9. Gray also admitted that she introduced Mozqueda Vasquez to another person who became a redistributor for the conspiracy. *Id.* At times Mozqueda Vasquez would send "runners" working for the DTO to deliver drugs to Gray to redistribute in the community. *Id.* And once, during a transaction involving a person known only as the "Russian," Gray helped the DTO facilitate the delivery of an astonishing 20 pounds of methamphetamine. *Id.* These sworn admissions demonstrate clearly that Gray was not "substantially less culpable" than the

average conspiracy member. USSG § 3B1.2, cmt. 3(A). Because Gray fails to show a factual basis for a minor role reduction, the Court concludes that Feldman was not ineffective when he declined to request the reduction at sentencing. Therefore, ground three is denied.

**C.    Grounds Remaining from the Original Petition**

In October 2018, the parties filed a stipulated motion amending the § 2255 petition. Dkt. 14. In relevant part, the stipulation indicated that the grounds alleged in the original petition (four, five, six, seven, and eight) "remain as stated." *Id.* at 2. The stipulation also stated that the grounds "will be supplemented in [Gray's] additional briefing now scheduled to be filed January 4, 2019." *Id.* at 2. Despite this representation, the brief that Elliott submitted on Gray's behalf on January 4, 2019 asserted only three grounds for relief, which indicates that Gray has abandoned the other grounds. *See* Dkt. 17. Adding to the Court's confusion, Gray titled her brief as a brief in support of the *amended* § 2255 motion, which, since no separate amended petition has ever been filed, also seems to signify that she has chosen to advance only grounds one, two, and three. *Id.* Regardless, Gray has failed to advance the grounds that remain from the original pro se petition. Therefore, as indicated below, Gray is ordered to show cause why the Court should not dismiss those grounds for failure to prosecute under Fed. R. Civ. P. 41(b).

**IV.   ORDER**

Therefore, it is hereby **ORDERED** that Gray's motion to vacate, set aside, or correct sentence, Dkt. 1, is **DENIED** as to ground one and ground three, **GRANTED** as to her request for an evidentiary hearing on ground two, and **RESERVING** ruling on the

merits of ground two. The parties shall submit a joint status report with proposed dates for the evidentiary hearing by August 23, 2019.

Gray is further ordered to **SHOW CAUSE** in writing why the Court should not **DISMISS** the grounds remaining from the original petition for failure to prosecute. Failure to show cause or otherwise respond by **August 23, 2019** will result in **DISMISSAL** of those grounds without further notice to the parties.

Dated this 6th day of August, 2019.

BENJAMIN H. SETTLE
United States District Judge