UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KIMBERLY B. GRAY,<br><br>               Petitioner,<br>   v.<br><br>UNITED STATES OF AMERICA,<br><br>               Respondent. | CASE NO. CV 18-5464 BHS<br><br>ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE AFTER EVIDENTIARY HEARING |

This matter comes before the Court on Petitioner Kimberly Gray's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Dkt. 1. The Court has considered the pleadings filed in support of and in opposition to the motion, the testimony at the evidentiary hearing held December 2, 2019, the post-hearing pleadings, and the remainder of the file and hereby denies the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

In 2017 the Court sentenced Gray to 72 months of incarceration following her guilty plea to the lesser-included offense of conspiracy to distribute a controlled substance.[1] *United States v. Gray*, No. CR 16-5600BHS ("CR"), Dkts. 372, 514. That

---

[1] A more detailed history is set forth in the Court's initial order on the motion found at Dkt. 22.

charge carried a mandatory 60-month sentence. *Id.*, Dkt. 372; 21 U.S.C. § 841(b)(1)(B). The indictment initially charged Gray with three counts, two of which carried minimum sentences of 120 months. *Id.*, Dkt. 273.

**A.    Section 2255 Motion**

On June 11, 2018, Gray filed a pro se motion under 28 U.S.C. § 2255 asserting ineffective assistance of counsel based on ten grounds. Dkt. 1. The Court appointed an attorney to represent Gray on the motion. Dkt. 10. On January 4, 2019, Gray filed a memorandum of law addressing only three of the original ten grounds for relief. Dkt. 17. On February 26, 2019, the Government responded, also addressing only those three grounds. Dkt. 20. On March 15, 2019, Gray replied. Dkt. 21.

On August 6, 2019, the Court issued an order ("initial order on the motion") denying ground one and ground three, granting an evidentiary hearing and reserving ruling on the merits of ground two, and requiring Gray to show cause why the remaining, unaddressed grounds should not be dismissed for failure to prosecute. Dkt. 22. On August 22, 2019, Gray responded and withdrew the remaining grounds. Dkt. 23.[2]

**B.    Evidentiary Hearing**

On December 2, 2019, the Court held an evidentiary hearing on ground two. Dkt. 29. Gray was present and represented by counsel. *Id.* Gray testified on her own behalf. *Id.*

---

[2] Gray purported to include ground one and ground three in the grounds withdrawn by her response to the show cause order, Dkt. 23, but the Court had already ruled on those grounds when it issued its initial order on the motion, Dkt. 22. Thus, neither ground one nor ground three was withdrawn. Instead, the Court denied them on the merits. Dkt. 22.

Attorney James Feldman ("Feldman"), Gray's former counsel, and Marci Ellsworth ("Ellsworth"), the prosecutor on Gray's case, testified on behalf of the Government. *Id.*

At the end of the hearing the Court directed the parties to submit supplemental briefing. *Id.* On December 13, 2019, Gray filed a post-hearing memorandum. Dkt. 31. On December 20, 2019, the Government responded. Dkt. 32. On December 27, 2019, Gray replied. Dkt. 33.

## II. FACTUAL BACKGROUND

### A. Allegations in the Motion

In ground two, Gray asserts that Feldman rendered ineffective assistance of counsel by failing to adequately explain the benefits of cooperating, including the possibility that the Government would file a motion pursuant to United States Sentencing Guideline § 5K1.1 potentially allowing her to obtain a sentence below the mandatory minimum.[3] Dkt. 1 ("At no point did Counsel tell me that if I cooperated with the Government, I could have received a reduced sentence. It wasn't until after I was in prison did I find out that if I would have cooperated, I could have received a 5K1.1 or a Rule 35 reduction.").

#### 1. Feldman's Version of Events

The Government filed a declaration from Feldman supporting its opposition to the motion. Dkt. 20-2, Declaration of James B. Feldman ("Feldman Decl.").

---

[3] This motion is referred to colloquially as a "5K," "5K1.1," or "substantial assistance" motion.

Regarding the advice Feldman gave Gray on cooperating/proffering, Feldman declared as follows:

> At the same January 13, 2017, meeting described above in which I reviewed discovery with Ms. Gray, I discussed with her the potential benefit of cooperating with law enforcement. **Although I did not refer to this as proffering, I explained that providing the Government with helpful information about her case might result in a sentencing benefit.** Ms. Gray strongly objected to the idea of cooperating and insisted she did not know any information that would be useful to law enforcement.

Feldman Decl., ¶ 9. Feldman also declared that he "raised the possibility of cooperating with law enforcement" at least one other time, but each time Gray responded by objecting to the idea of cooperating and stating she had no information to provide. *Id.* ¶¶ 9–10.

### 2. Gray's Version of Events

In reply to the Government's opposition and Feldman's declaration, Gray submitted a declaration. Dkt. 21-1, Declaration of Kimberly Gray ("Gray Decl."). Gray declared that Feldman failed to explain that cooperating with or providing a proffer to the Government could allow the Court to impose a sentence below the mandatory minimum sentence pursuant to § 5K1.1. Gray Decl., ¶¶ 3, 4, 8. Gray further declared that she could and would have supplied the Government with information if she had received "the correct explanation and advice . . . ." from Feldman. *Id.* ¶ 10.

### B. Initial Order on the Motion

In its initial order on the motion, the Court found that Gray stated a claim of ineffective assistance of counsel on ground two. *Id.* Regarding performance, the Court reasoned that in the context of modern federal practice, "the important relationship between a defendant's cooperation and the ultimate sentence" coupled with an allegation

"that an attorney did not explain the operation of a § 5K1.1 motion as a means to reduce a mandatory minimum sentence" stated a prima facie claim of deficient performance. *Id.* at 14 (footnote omitted). The Court then found that the Government failed to establish that Feldman had met this obligation. *Id.* at 14–15.

However, Gray did not explicitly deny Feldman's version of his representation, at least to the extent he affirmed that he had raised the issue of cooperation with her. *Id.* Thus, the Court's initial order on the motion found that "the parties agree that Feldman discussed with Gray the general opportunity to cooperate and/or provide a proffer to the Government." Dkt. 22 at 12 (*comparing* Gray Decl., ¶ 3 (stating that Gray "did not understand *all of the issues* related to 5K1.1 . . . . It was only later that [she] learned that [she] had to come in and tell the Government everything [she] knew") *with id.*, ¶ 6 (stating that the only reason Feldman assumed Gray did not want to provide a proffer was "because he did not explain that option *fully* to [Gray]")).

Despite its prima facie finding of deficient performance, due to the imprecise nature of Gray's declaration the Court could not determine whether she admitted or denied Feldman's assertion that, when he raised the issue of cooperating with her on two occasions, she told him each time that she had no information to provide. *Id.* at 18. In light of this factual discrepancy, the Court reserved ruling on the reasonableness of Feldman's failure to discuss the impact of § 5K1.1 on Gray's mandatory minimum sentence. *Id.*; *see also Strickland v. Washington*, 466 U.S. 668, 688 (1984) (defendant must establish that counsel's representation was objectively unreasonable). The Court

noted that it would have to resolve an issue of credibility at the evidentiary hearing if Gray denied telling Feldman she had no information to provide during the proceeding. *Id.*

Regarding a showing of prejudice, the Court held in its initial order on the motion that Gray must demonstrate a reasonable probability that her sentence would have been shorter than the 72 months the Court imposed but for Feldman's failure to explain that cooperation could allow her to escape the 60-month mandatory minimum. *Id.* at 15. Noting that the Government retains near complete discretion over the decision to file a motion to reduce sentence based on a defendant's substantial assistance in the investigation or prosecution of another, and further, that it would have been unlikely to do so in this case, the Court instead relied on its own sentencing record. *Id.* at 16–17. At Gray's sentencing hearing, the Court "commented on Gray's disrespect for the law, noting that she had given the Court 'no assurance' that she had decided 'to leave a criminal life behind.'" *Id.* at 17 (citing Sent. Tr. at 16). Given these statements, the Court found a reasonable probability that it could have viewed her attitude towards respect for the law differently and imposed a sentence shorter than 72 months because, even if the Government did not ultimately file a substantial assistance motion, the fact of Gray's attempted cooperation would have been a matter of mitigation properly before the Court. *Id.; see also* 18 U.S.C. 3553(a) (requiring judges imposing sentence to assess, among other factors, the characteristics and history of the defendant). Thus, the Court held that Gray had "demonstrated a reasonable probability that counsel's failure to explain the impact of a § 5K1.1 motion led her to receive a longer sentence, thereby demonstrating prejudice." *Id.*

## C. Evidentiary Hearing

On December 2, 2019, the Court held an evidentiary hearing. Dkt. 29. Gray testified that Feldman never told her that she could receive a lower sentence if she cooperated. Dkt. 30, Transcript of Evidentiary Hearing ("Evid. Hrg. Tr."), at 22, 23, 26, 29–30. Gray testified that her goal was to receive the lowest sentence possible, Evid. Hrg. Tr. at 18, and that she would have cooperated with the government had she known that doing could have put her in a better sentencing position, *id.* at 35.

Feldman testified consistently with his declaration—that is, that he told Gray on two occasions that if she spoke to law enforcement, she might be able to reduce her sentence or receive a sentencing benefit. Evid. Hrg. Tr. at 56–59. Feldman further stated that on each occasion, Gray responded that she did not know anything. *Id.* at 58. Feldman testified that he remembered Gray's answers because of the emotion she displayed— either anger, annoyance, or frustration—when she responded. *Id.* at 57. Beyond telling Gray that she could she could potentially minimize or reduce her sentence by cooperating with law enforcement, *id.* at 56, Feldman did not testify that he discussed with Gray the operation of § 5K1.1 as a means to go below the minimum sentence prescribed by law.

At the close of the hearing, the Court ordered supplemental briefing from the parties focusing on two issues. *Id.* at 96. First, the Court asked the parties to provide specific authority addressing whether, when a mandatory minimum applies, a defense attorney is obligated "to review with his or her client the different avenues to . . . obtain relief from that mandatory minimum." *Id.* Second, assuming that (1) defense attorneys have "an obligation to disclose or discuss 5K1.1," and (2) that the Government was

unlikely to have brought a 5K1.1 motion in this case, the Court asked for authority as to whether it might still consider as relevant Gray's attempted cooperation as a mitigating factor at sentencing. *Id.*

The parties submitted the requested briefing. Dkts. 31, 32, 33. This order follows.

## III.  DISCUSSION

### A.  Legal Standards

#### 1.  28 U.S.C. 2255

Under 28 U.S.C. § 2255, the Court may grant relief to a federal prisoner who challenges the imposition or length of his incarceration on the ground that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

If the motion is not summarily dismissed, "the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b).

#### 2.  Ineffective Assistance of Counsel

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland*, 466 U.S. at 687. The Court evaluates ineffective assistance of counsel claims under the two-prong test set forth in *Strickland*. To prevail, the prisoner must prove (1) that his counsel's performance was deficient, and (2) that this deficient performance was prejudicial. *Id.*

To establish deficient performance, Gray must show that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. The Court must apply a "strong presumption" that counsel's conduct falls within the "wide range of reasonable professional assistance." *Id.* at 689. With respect to prejudice, Gray must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.*

**B.     Merits of Motion**

This case can be divided into two components: first, whether Feldman, by failing to inform Gray of the potential to obtain relief from a mandatory minimum sentence via a § 5K1.1 motion, "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. 688, and second, whether there is a reasonable probability that Gray's sentence would have been shorter but for that alleged error, *id.* at 694. The Court is not required to address both questions and may consider them in any order. *Id.* at 697.

The Court first examines the reasonableness of Feldman's representation. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. In this case, both the Government and Gray rely on standards promulgated by the American Bar Association to argue that Feldman's representation was reasonable or unreasonable, respectively. Dkts. 31, 32, 33. "Prevailing norms of practice as reflected in American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4–1.1 to 4–8.6 . . . are guides to determining what is reasonable, but they are only guides." *Id.* Judicial scrutiny of counsel's performance is

highly deferential, because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689.

Gray cites ABA Standard for the Defense Function ("ABA Standard") 4-5.1(h) in support of her argument that Feldman had a duty to advise her that cooperating could facilitate the Court's imposition of a sentence below the mandatory minimum via a government motion filed pursuant to § 5K1.1. ABA Standard 4-5.1(h) provides: "Defense counsel should consider and advise the client of potential benefits as well as negative aspects of cooperating with law enforcement or the prosecution." Gray contends that this standard recognizes the "importance of counsel discussing fully with his client actions that would ultimately reduce the sentence the defendant may receive." Dkt. 31 at 5. Gray also argues that notwithstanding these standards, Ellsworth's testimony at the hearing and circuit law each recognize that under prevailing professional norms, a defendant's decision whether to cooperate is a crucial aspect of federal plea bargaining and sentencing practice. *Id.* at 5–6.

The Government argues that Gray "has failed to identify specific authority requiring defense attorneys to discuss government motions for substantial assistance with their clients whenever a mandatory minimum applies." Dkt. 32 at 1. The Government further contends that Feldman's testimony at the hearing establishes that he satisfied ABA Standard 4-5.1(h) because he testified that he advised Gray that she could potentially minimize or reduce her sentence if she cooperated. Finally, the Government argues that Feldman otherwise behaved reasonably in light of (1) ABA standards

requiring defense counsel to exercise independent judgment and consider the client's desires and views, and (2) Gray's response(s) expressing to Feldman that she did not have any information to provide. Dkt. 32 at 3–4 (citing ABA Standards 4-5.1(a), (d)).

Concerning the issue of effectiveness, the Court is presented with a close question. On the one hand, the Court agrees with the Government that Feldman's testimony at the evidentiary hearing demonstrates that he satisfied the plain language of a prevailing professional guideline, albeit minimally, because he "advise[d] [Gray] of potential benefits . . . of cooperating with law enforcement or the prosecution." ABA Standard 4-5.1(h). On the other hand, the Court recognizes, as the Ninth Circuit has, that under the federal sentencing regime a defendant's ability to receive the lowest possible sentence often turns on whether the defendant cooperates with the government. *United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir. 2003). A defendant, of course, cannot make an informed decision regarding a particular course of action if defense counsel fails to adequately discuss or explain the benefits of taking said action.

In this Court's view, defense counsel's explanation of the benefits (and risks) of cooperating should be thorough, but especially so when the defendant is a member of a large drug conspiracy and faces a mandatory minimum sentence. A comprehensive explanation of the impact of cooperation should include the possibility that the Government will file a substantial assistance motion as a mechanism allowing the court to potentially reduce a mandatory minimum sentence, even if that mandatory minimum sentence has already been lowered, as it was in this case, as a result of a bargained-for exchange. In the undersigned's opinion, a comprehensive discussion of the possible

effects of cooperating as a means to reduce a mandatory minimum sentence is necessary because ultimately, the non-professional client makes the final decision regarding her cooperation. ABA Standard 4-5.2 (b)(iv) ("The decisions ultimately to be made by a competent client, after *full consultation* with defense counsel, include: . . . whether to cooperate with or provide substantial assistance to the government") (emphasis added).

The Court acknowledges, however, that its views are more expansive than the relevant authority. All things considered, the Government is correct that even with the opportunity to provide supplemental briefing, Gray cites no authority either (1) requiring defense counsel to discuss cooperation *as a means to reduce a mandatory minimum*, or (2) analyzing deficient performance based on defense counsel's failure to do so. Without legal precedent, the Court lacks authority to hold that Gray has demonstrated that Feldman's representation fell below prevailing professional norms of competent representation, thereby meeting her burden to establish deficient performance. Therefore, taking into account the deference the Court must accord Feldman's discussions about cooperation under *Strickland*, alongside the guidance of ABA Standard 4-5.1(h), which the Court finds Feldman met by telling Gray she could receive a shorter sentence if she spoke to law enforcement, the Court concludes that his representation was not so objectively unreasonable as to run afoul of Gray's Sixth Amendment rights.

Even if the Court is incorrect regarding the issue of ineffectiveness, however, Gray also fails to show prejudice on this claim. As the Court foreshadowed in its earlier order, the need to make a credibility determination arose at the evidentiary hearing when Gray testified that Feldman never discussed § 5K1.1 or cooperating in relation to a sentencing

benefit,[4] Evid. Hrg. Tr. at 29–30, while Feldman testified that he raised the possibility of cooperating with Gray two times, and both times she responded with emotion saying, "but I don't know anything," *Id.* at 57–59.

While the Court found each witness generally credible, the Court specifically credits Feldman's testimony on this issue based on its in-court observations and the specific nature of his recall of Gray's responses. *Id.* at 57 ("[O]ddly enough, I do remember her words because she was very forceful and very emotional in her response."). In short, the Court finds Feldman's testimony more credible than Gray's on this subject.

After crediting Feldman's testimony, the Court must determine if Gray demonstrates a reasonable probability of receiving a sentence shorter than 72 months but for Feldman's failure to explain that a § 5K1.1 motion could allow the Court to impose a sentence below the mandatory minimum had the government filed such a motion. With the benefit of live testimony and after crediting Feldman's recollection of events on the issue of cooperation, the Court concludes that Gray fails to make this showing.

As established by the Government at the hearing, it was highly unlikely to have filed a substantial assistance motion on behalf of Gray in this case. Evid. Hrg. Tr. at 80–84.[5] In the absence of such a motion, the Court was without authority to impose less than

---

[4] Gray did testify that Feldman discussed providing a proffer in the context of her drug court application, Evid. Hrg. Tr. at 29, which was later denied.

[5] Ellsworth's testimony established that there was no need for the Government to bring a substantial assistance motion on Gray's behalf because all of her co-defendants had either entered guilty pleas or were in the process of plea negotiations, limiting its need for cooperating witnesses and (2) even if a cooperating witness was needed, Ellsworth doubted Gray's credibility

60 months. 18 U.S.C. § 3553(e). Thus, Gray cannot demonstrate with reasonable probability her receipt of a sentence below the mandatory minimum even if Feldman had fully discussed the operation of a substantial assistance motion with her.

Still, Gray argues she has demonstrated a reasonable probability that she would have received a sentence between 60 and 72 months but for Feldman's errors. In its initial order on the motion, the Court agreed with her because even her attempt to cooperate would have been a mitigating factor before the Court at sentencing, which may have persuaded the undersigned that she had left her criminal life behind. However, Feldman's testimony at the hearing which the Court has credited establishes that Gray emphatically declined the concept of cooperation in exchange for a sentencing benefit, even when she faced the longer, ten-year mandatory minimum sentence on the conspiracy charge. Given this testimony, she fails to demonstrate a reasonable probability that she would have cooperated in order to avoid the shorter five-year sentence on the lesser-included charge negotiated for in the plea agreement. Said another way, the Court's confidence in its 72-month sentence is not undermined because Gray fails to meet her burden to demonstrate that she would have cooperated to shorten her sentence. *Strickland*, 466 U.S. at 694. She therefore fails to demonstrate prejudice on the motion.

**C.     Certificate of Appealability**

A petitioner must receive a certificate of appealability ("COA") to appeal the denial of a motion brought pursuant to § 2255. 28 U.S.C. § 2253(c)(1); Fed. R. App. P.

---

based on her criminal history, her destruction of evidence at the time of arrest, and her record of performance on pretrial supervision. Evid. Hrg. Tr. at 82–83.

22. The Court should grant a COA if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). The substantial showing standard is satisfied if reasonable jurists could disagree over the Court's resolution of the motion. *Slack*, 529 U.S. at 484.

In this case, the Court declines to issue a COA. While reasonable jurists could potentially disagree over the Court's finding on the element of ineffective assistance, the Court's conclusion that Gray fails to show prejudice on the motion is beyond debate. Hence, she fails to make a substantial showing of the denial of her constitutional rights.

## IV. ORDER

Therefore, it is hereby **ORDERED** that ground two, the sole remaining claim from Gray's motion to vacate, set aside, or reduce sentence, Dkt. 1, is **DENIED**.

The Clerk shall enter **JUDGMENT** and close the case.

Dated this 5th day of March, 2020.

BENJAMIN H. SETTLE
United States District Judge